## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| YOUNG JANG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br>    vs.<br><br>GALENA BIOPHARMA, INC, MARK J. AHN, STEVEN KRIEGMAN, THE DREAMTEAMGROUP, and MISSIONIR,<br><br>        Defendants. | CASE No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Young Jang, individually and on behalf of all other persons similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants Galena Biopharma, Inc. ("GALE," "Galena," or the "Company"), Mark J. Ahn, and Steven Kriegsman, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of the common stock of Galena common stock between November 22, 2013  and February 14, 2014, inclusive (the "Class Period").

1

2. In July 2013, Galena hired The DreamTeam Group ("DTG") and MissionIR, two affiliated promotional agents, to tout its stock. The contract provided that DTG would tout Galena's stock for 240 days, or until about March 2014. According to DTG, the purpose of the promotional campaign was to "raise additional capital, increase shareholder value, and raise visibility to the public [capital] market" – not to sell Galena's products.

3. Upon being retained, DTG and MissionIR conducted a massive promotional campaign, which included at least 15 published articles or news reports, one 18 minute interview of Galena's CEO conducted by the promotional agent, and various statements made through various social media outlets. The 15 articles included two articles, published on www.seekingalpha.com on August 7, 2013, and November 22, 2013.

4. The November 22, 2013 article provides:

> The past few years have certainly been kind to biotechnology stocks. With incredible amounts of money being poured into medical research, investors continue to look for the next breakthrough area. One area that appears promising is biotechnology companies that are focusing on developing breakthrough treatments for various forms of cancer. Over the past few weeks, one company in particular that has performed well on positive trial data is **Galena Biopharma** (GALE).
>
> Galena Biopharma is a small-cap biotechnology stock that develops innovative, targeted oncology treatments that address major unmet medical needs to advance cancer care. Although the company is well-known for their research in breast cancer, the company released some very encouraging initial results earlier this month on its Phase 1 Folate Binding Protein trial at the Society for Immunotherapy of Cancer Conference.
> ***
> Galena's hope for the Phase I FBP trial is to prevent endometrial and ovarian cancer recurrences in patients that completed a normal course of therapy and were rendered disease free after doing so. Thus far, the company's [i.e., Galena's] hope appears closer to becoming a reality. During the trial, Galena was able to determine the optimal dose to be 500 mcg peptide combined with 250 mcg GM-CSF.

2

\*\*\*

Exciting Times Ahead

As investors soak in the promising early results from the FBP Phase 1 trial, they should also be aware that Galena continues to push forward with NeuVax (used in the treatment of breast cancer). The company expects to complete the NeuVax Phase 3 enrollment early next year. Galena also expects to announce interim results based upon 70 events by the summer of 2014 at the very latest. If positive, these interim results will likely send the shares to new 52-week highs. In fact, biotech companies typically see significant share price runs over the course of a Phase 3 trial, up until the results are announced. If investors have a reason to believe the results will be positive, Galena could end up being the biotech stock of 2014.

\*\*\*

Final Thoughts

Although it's never a good idea to invest all of one's trading funds in one particular stock, Galena Biopharma appears to be one company that deserves at least a small allocation of capital. By building a diversified portfolio of breakthrough treatments and products, corporate management appears to be serious about building a global biotechnology company that can grow significantly during the years to come. With a market cap of just over $300 million and the potential to generate billions of dollars in revenue, the rewards of success far outweighs the penalties of failure.

5. The article is misleading because it did not contain a disclosure that the author, Kingmaker, was a paid promoter.

6. The article included a disclaimer:

I have no positions in any stocks mentioned, and no plans to initiate any positions within the next 72 hours. I wrote this article myself, and it expresses my own opinions. I am not receiving compensation for it (other than from Seeking Alpha [the article's publisher]. I have no business relationship with any company whose stock is mentioned in this article.

7. The disclaimer was false because "Kingmaker" did not express its own opinions, was receiving compensation for writing the article from GALE, and had a business relationship with GALE.

8. The profile of "Kingmaker" provided that:

3

My expertise is in researching and writing about micro and small-cap biotechnology stocks. I run a volatility trading group that focuses on exploiting differences in IV vs. HV in biotech names with upcoming catalysts.

9. The statements were false because "Kingmaker" was an alias used by DTG and MissionIR, who did not run a volatility trading group of any sort.

10. It is well understood in the investor relations community that it is misleading to omit to disclose that an article is part of a paid promotion, and that such a failure may constitute securities fraud. And as to the November 22 article, DTG specifically stated that it had no business relationship with GALE and that it was not paid by GALE to publish the article.

11. Nonetheless, DTG and MissionIR misleadingly omitted to disclose that they were not expressing its own opinion, but rather were paid to tout it. And to make it more difficult to discover the promotion and create the impression of a groundswell of support, though a few of the articles were published under the name of Tips.us, a website controlled by MissionIR, but the majority of the articles were published under various false aliases.

12. Galena controlled the promotion, and controlled the actions of its promotional agent.

13. In a document titled "case study" drafted in or around January 2014, MissionIR boasted of its promotional campaign, claiming it "[u]tilize[d] DTG's vast network of websites, partners, blogs, and team of professionals to demonstrate GALE's progress and increasing potential." The case study also boasted that on December 5, 2013, "GALE's stock hit[] $4.78, up 184.52% since the start of [GALE's] partnership with DTG," and that "through January 2014, shares of GALE consistently traded higher [than in December 2013]."

14. In January 2014, Galena's officers and directors combined sold over $10 million of GALE shares. In particular, GALE CEO Mark J. Ahn sold net $2.79 million of GALE stock.

4

Steven Kriegsman, a GALE Director who is also CEO of CytRX, another DTG client, sold net $2.49 million of shares in January. Other officers and directors collectively sold net $4.7 million of shares.

15. On February 1, 2014, a Saturday, an article titled Galena Biopharma: Numerous Red Flags Suggest A Significant Overvaluation, written by Matt Gravitt, was published on www.seekingalpha.com, an investor website. Mr. Gravitt explained that his own investigation had led him to believe that some of the overwhelmingly positive publicity Galena had recently received had been published by a paid promoter. Specifically, Mr. Gravitt (a) checked the authorship of some of the positive articles, (b) determined that some had been issued by "Tips.us" (c) found on *Tips.us* a disclaimer disclosing that *MissionIR* had been paid by GALE, and (d) theorized that other articles may have also been written by a paid promoter. But because the promotional agents wrote most of their articles under false aliases, there was no way for Mr. Gravitt to determine that his theory was accurate:

### Paying Companies for Stock Promotion and Significant Insider Selling are Major Red Flags Stock Promotion

When I first started investing in/trading biotech stocks, I was fortunate enough to have several trading mentors impart valuable insight and words of wisdom that has helped contribute to my success. These "words of wisdom" included a warning about stocks that are constantly "pumped" over the internet.

As outlined in a March 2012 article by SeekingAlpha contributor Michael Morhamus, GALE's moves higher can be partially attributed to heavy promotion of the stock via the internet. After reading the article, I thought it brought up some interesting points and additional research into the matter was warranted. Needless to say, I came across some noteworthy pieces of information as it relates to Galena's stock being "promoted" via various outlets.

Stockpromoters.com is a website that (among other features) allows users to type in a company symbol and see whether or not they are involved in any current promotions and if they are, how much they paid for it. A search for "GALE"

yielded results that certainly validate the claims made in the aforementioned article. According to the website, there have been 27 different instances of GALE being "promoted" since March 2012. I am not suggesting that this is good, bad, or indifferent. I am simply pointing out some of the information I came across. However, further investigation revealed that Galena was paying for these promotions. This, for me, is definitely a red flag.

According to a disclaimer found on the tip-us website, MissionIR received compensation from "GALE for 240 days of advertising, branding, marketing, investor relations and social media services provided by MissionIR and affiliate DreamTeamGroup Business Brands."

This potentially explains a part of the massive increase in the company's SG&A Expenses (obviously a large part of the increase was due to the Abstral launch).

16. On the next trading day, Galena's stock price fell from $5.27 to $4.22, or 23%, on very high volume, damaging investors.

17. On February 12, 2014, during trading hours, journalist Adam Feuerstein published an article on www.thestreet.com claiming that Galena insiders had paid for DTG to promote its stock even as insiders sold $10 million of stock in January 2014:

NEW YORK (TheStreet) -- Two articles touting Galena Biopharma (GALE) were removed from *Seeking Alpha* Monday because they were written by the same person using different aliases.

This is the second time *Seeking Alpha* has been forced to take action against individuals using multiple aliases to tout Galena, a small drug developer with a breast cancer vaccine in a phase III study. In January 2013, the investor Web site removed five articles promoting Galena written by the same individual under three different pseudonyms.

The most recent incident is more serious and potentially damaging because of evidence linking Galena to a stock-promotions firm which wrote and published the articles on *Seeking Alpha*. The articles were part of a broader, coordinated "brand awareness campaign" designed to boost Galena's stock price, according to a document obtained by *TheStreet*.

Aided by this promotional campaign, Galena shares tripled in value from this summer. Coincidence or not, Galena insiders have made millions of dollars by selling company stock in January.

6

Galena did not respond to phone calls and emails seeking comment.

In July 2013, Galena paid $50,000 to a subsidiary of The DreamTeam Group for 240 days of "advertising, branding, marketing, investor relations and social media services," according to a disclaimer on The DreamTeam Group's Web site.

[Update: Following publication of this story, DreamTeam Group removed the Galena compensation disclosure from its web site. Here is the screen shot disclosing Galena's payment to DreamTeam Group.]

> • GALE: MissionIR, an affiliate of DreamTeamGroup, received $50,000 from GALE for 240 days of advertising, branding, marketing, investor relations and social media services provided by MissionIR and affiliate DreamTeamGroup Business Brands. Please read entire MissionIR Disclaimer for FULL Compensation Disclosures.

Publicly traded companies routinely pitch their stock to new investors, but some of DreamTeam's marketing tactics appear to resemble stock promotion schemes which run afoul of standard investor relations practices. Among its other services, DreamTeam Group operates more than two dozen investor Web sites with names like "Home Run Stocks," "Touchdown Stocks," "Quality Stocks," and "Tout Sheet." The Web sites entice investors with stock picks that can "trade for at least a 100% profit."

All the stock picks touted on these DreamTeam Web sites, including Galena, are paying clients -- a fact omitted from the Web sites unless someone clicks on a small disclaimer link.

Galena was promoted on many of the DreamTeam stock-touting Web sites to create "market buzz about the company to a new group of investors," according to a DreamTeam document, "Galena Biopharma Case Study: Investor Awareness Campaign" obtained by *TheStreet*.

As part of this campaign, DreamTeam published favorable articles about Galena on *Seeking Alpha* on Aug. 7, 2013 and Nov. 22, 2013, according to the case-study document. But the articles were written under aliases and make no mention of DreamTeam or its paid marketing relationship with Galena. Instead, they're written from the perspective of individual investors recommending an investment in Galena to other readers of *Seeking Alpha*.
    On Nov. 22, "Kingmaker" published a similar article on *Seeking Alpha* titled, "Galena Biopharma Continues to Develop a Deep Pipeline of Products." Neither article disclosed a financial relationship with DreamTeam Group or Galena.

Both articles were removed from *Seeking Alpha* on Monday because they were written by the same person.

7

"We pulled the Aug. 6 and Nov. 22 articles. Upon investigation, the contributor was in violation of our Terms of Use because 'Kingmaker' and 'Wonderful Wizard' were the same person but failed to tell us so," said *Seeking Alpha* Vice President of Content and Editor in Chief Eli Hoffman.
*Seeking Alpha* was unable to determine if the author was paid by DreamTeam Group to write the two articles on Galena, added Hoffman. Hoffman would not disclose the real identify of the author publishing under the "Kingmaker" and "Wonderful Wizard" aliases.

The DreamTeam Group promoted Galena's stock in other ways than just publishing *Seeking Alpha* articles.

"By December 20, 2013, DTG has published a total of 50 unique GALE-centered blogs that were distributed throughout the DTG network and a number of investor-oriented community site on the Internet such as StockHouse, StockTwits, Seeking Alpha and Wall Street Cheat Sheet," DreamTeam explains in the document obtained by *TheStreet*.

DreamTeam also employs people who promote the stocks of paying clients on message boards, Facebook and via Twitter, according to the document.

DreamTeam Managing Partner Michael Andrew McCarthy did not respond to a message left on his cellphone.

All that DreamTeam promotion worked wonders for Galena's stock price, which tripled in value from $2 per share in July 2013 to almost $7.50 in the middle of January. DreamTeam's contract for eight months of work with Galena ends this month.

Galena CEO Ahn unloaded $2.8 million in company stock in January, according to SEC filings. Director Steven Kriegsman, who's also the CEO of Cytrx (CYTR), pocketed $2.1 million from the sale of Galena stock in the same month, according to SEC filings. Other Galena executives and directors have also been selling shares.

Cytrx is also a DreamTeam Group client, paying $65,000 for a year's worth of stock promotion, according to a disclaimer on DreamTeam Group's Web site.

The timing of the Galena insider sales may or may not be related to the end of the promotional work being done by Galena. In a recent published interview, Ahn said he sold part of his Galena holding to "diversify for my family."

18. On February 12, 2014, Galena's stock price fell from $5.22 to $4.34, damaging investors.

19. On February 14, 2014, Galena issued a press release, which purported to deny Mr. Feuerstein's allegation, but actually conceded that "[t]he only facts in Mr. Feuerstein's most recent article that are remotely accurate are that Galena previously engaged the DreamTeamGroup and that insiders at the company, including me[1], divested shares in mid January."

## JURISDICTION AND VENUE

20. Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

21. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). GALE's principal executive offices are located in this District, and Defendant Mark J. Ahn resides in this District.

22. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

23. Plaintiff Young Jang, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Galena during the Class Period and has been damaged thereby. Plaintiff Jang bought Galena stock on January 17 and 21, 2014.

---

[1] The letter purports to have been written by Mark J. Ahn, Galena's CEO.

24. Defendant Galena is a biopharmaceutical company which focuses on developing oncology treatments.

25. Defendants DreamTeamGroup ("DTG") and MissionIR are securities advertisers and investor relations firms that create and execute a "strategy that produces measurable results and attracts a wider following of investors to improve each client's overall market valuation." DTG and MissionIR are affiliates.

26. Defendant Mark J. Ahn was and is Galena's President and CEO. Defendant Ahn was interviewed by The DreamTeam Group on August 7, 2013. Ahn made stock sales while in possession of material non-public information on January 27, 2014, when he sold $3,848,374 of stock at $4.93 per share.

27. Defendant Steven Kriegsman has sat on Galena's board since 2006. He is the CEO of CytRx. Defendant Kriegsman was interviewed by the DreamTeamGroup on or before January 16, 2014, and was quoted in blog posts dated January 14, 21, and 23, 2014. Galena stated that Kriegsman was qualified to be one of its directors because of his experience as CytRx's CEO. Kriegsman made stock sales while in possession of material non-public information: (a) on January 17, 2014, when he sold 200,000 shares at $6.90 per share, for proceeds of $1,380,000; (b) on January 29, 2014, when he sold 250,000 at $5.28 per share, for proceeds of $1,320,000.

28. Ahn and Kriegsman are the "Individual Defendants." Galena and the Individual Defendants are the "Galena Defendants." MissionIR and DTG are the "Promoter Defendants." The Promoter Defendants and the Galena Defendants are the "Defendants."

### RESPONDEAT SUPERIOR

10

29. Galena is liable for the acts of the Promoter Defendants and its employees under the doctrine of respondeat superior.

30. The scienter of the Promoter Defendants, the Individual Defendants, and other employees and agents of Galena is imputed to Galena under the doctrine of *respondeat superior*.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the securities of Galena during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Galena common stock and other publicly traded securities were actively traded on the Nasdaq. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Galena or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)  whether the Exchange Act was violated by defendants as alleged herein;

(b)  whether statements made by defendants misrepresented material facts about the business, operations and management of Galena; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

**36.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## APPLICATION OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

37. Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) The omissions and misrepresentations were material;

12

(c) The Company's stock traded in an efficient market;

(d) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e) Plaintiff and other members of the Class purchased Galena common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

38.   At all relevant times, the market for Galena common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, Galena filed periodic public reports with the SEC; and

(b) Galena regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

(c) Several hundreds of thousands of shares of Galena shares were traded on a weekly basis, demonstrating a strong presumption of an efficient market.

(d)  Galena was eligible and did file short-form registration statements with the SEC on Form S-3.

(e) Galena was followed by numerous analysts that issued reports about the Company.

(f) New company specific information was rapidly reflected in the Company's stock price.

(g) Dozens of market makers made a market in the Company's stock.

## COUNT I

### For Violations of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

39. Plaintiff incorporates the above allegations as if fully set forth herein.

40. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Galena common stock during the Class Period.

42. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Galena common stock. Plaintiff and the Class would not have purchased Galena common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violations of §20(a) of the Exchange Act
### Against All Defendants

43. Plaintiff incorporates the above allegations as if fully set forth herein.

14

44. The Individual Defendants acted as controlling persons of Galena within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of Galena stock, the Individual Defendants had the power and authority to cause Galena to engage in the wrongful conduct complained of herein. Galena controlled the Individual Defendants and all of the Company's employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

**COUNT III**

**For Insider Trading Violations of §20(A) of the Exchange Act
Against the Individual Defendants**

45. Plaintiff incorporates the above allegations as if fully set forth herein.

46. This claim is asserted by Plaintiff under §20A of the Exchange Act against Defendants Ahn and Kriegsman on behalf of all persons who purchased Galena securities contemporaneously with the sale of such securities by these Defendants.

47. During the Class Period, Ahn and Kriegsman occupied positions with Galena that made them privy to confidential information about the Company. In particular, Defendants Ahn and Kriegsman knew or should have known that Galena had retained DTG and MissionIR to promote its stock through a campaign that did not disclose that they were paid promoters

48. Notwithstanding their duty to refrain from trading in Galena common stock unless they disclosed the foregoing material adverse facts to the investing public, and in violation of their fiduciary duties to Plaintiff and other Class members, the Defendants sold in the aggregate over $5 million of stock.

15

49. Defendants Ahn and Kriegsman sold their Galena securities at prices artificially inflated by the nondisclosure and misrepresentations of material adverse facts in the MissionIR and DTG promotional campaign. Defendants knew or should have known that they were in possession of material adverse information which was not known to the investing public, including Plaintiff and other Class members. Before selling their stock to the public, Defendants Ahn and Kriegsman were obligated to disclose that information to Plaintiff and other Class members.

50. By reason of the foregoing, Defendants Ahn and Kriegsman directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of the national securities exchanges, employed devices, schemes, and artifices to defraud, and engaged in acts and transactions and a course of business which operated as a fraud or deceit upon the investing Class who purchased Galena securities contemporaneously with Defendant Ahn and Kriegsman.

51. Plaintiff and other members of the Class who purchased Galena securities contemporaneously with the insider sales: (1) have suffered substantial damages because they relied upon the integrity of the market and paid artificially inflated prices for Galena securities as a result of the violations of §10(b) and Rule 10b-5 alleged herein; and (2) would not have purchased Galena securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements and concealment. At the time of the Class member purchases, the fair and true value of Galena common stock was substantially less than the prices paid by them.

## **PRAYER FOR RELIEF**

16

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)  Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

17

Dated: March 13, 2014     Respectfully submitted,

**RANSOM, GILBERTSON, MARTIN & RATLIFF, L.L.P.**

By:
Jeffrey Ratliff
1500 NE Irving Street, Suite 412
Portland, Oregon 97232
Tel: 503-226-3664

-and-

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq
Phillip Kim, Esq.
Jonathan Horne, Esq.
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Galena Biopharma, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Galena Biopharma, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:** Young
**Middle initial:** K
**Last name:** Jang
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 1/21/2014 | 2000 | 6.15 |
| Common Stock | 1/17/2014 | 3000 | 7.00 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:          **YES**

**Certification for Young Jang (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 02/20/2014